# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN GODERT, AND ALL** | § | |
| **SIMILARLY SITUATED** | § | |
| **EMPLOYEES** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION No. 3:16-cv-2079-G** |
| | § | |
| **PALO ALTO NETWORKS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

---

## DEFENDANT PALO ALTO NETWORKS, INC.'S
## BRIEF IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

---

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

John B. Brown
Texas Bar No. 00793412
john.brown@ogletreedeakins.com
Robyn M. Funk
Texas Bar No. 24104415
robyn.funk@ogletreedeakins.com


Preston Commons, Suite 500
8117 Preston Road
Dallas, Texas  75225
Telephone:  214-987-3800
Facsimile:  214-987-3926

**ATTORNEYS FOR PALO ALTO NETWORKS, INC.**

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. SUMMARY JUDGMENT EVIDENCE ................................................................. 2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................... 3

    A.    Plaintiff's Employment with PAN ..................................................................... 3

    B.    The Structure of the Plano Facility and Hemphill's Employment as a First-Level
    Manager. ........................................................................................................... 3

    C.    The April 1, 2015 Incident ................................................................................ 4

    D.    Plaintiff's Complaints About the April 1, 2015 Incident ................................. 6

    E.    PAN's Workers' Compensation Coverage. ...................................................... 7

    F.    Plaintiff's Breach of Contract Claim. ............................................................... 7

    G.    Plaintiff Was Advised His Salary Was Intended to Compensate For Any and All
    Hours Worked .................................................................................................... 8

VI. ARGUMENT AND AUTHORITIES ...................................................................... 9

    A.    Plaintiff's Negligence, Negligent Supervision, and Assault Claims Fail as a Matter of
    Law. ................................................................................................................... 9

        1.    Plaintiff's Claims for Negligence and Negligent Supervision are Barred by
        Workers' Compensation Exclusivity. ....................................................... 9

        2.    Plaintiff's Claim for Assault is also Barred by Workers' Compensation
        Exclusivity. ............................................................................................... 11

        3.    Alternatively, Plaintiff's Intentional Tort Claim Against PAN Fails as a Matter of
        Law Because Hemphill's Actions Were Not In the Course and Scope of His
        Duties. ....................................................................................................... 13

    B.    Plaintiff's Breach of Contract Claims Fail as a Matter of Law. ..................... 14

    C.    The Court Should Apply the Fluctuating Workweek Method to Calculate Any
    Damages with Regard to Plaintiff's FLSA Claim. ........................................ 17

VII. CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arredondo v. Estrada,*
    120 F.Supp.3d 637 (S.D. Tex. 2015) ...................................................................10

*Black v. SettlePou, P.C.,*
    732 F.3d 492 (5th Cir. 2013) ......................................................................17, 18

*Blackmon v. Brookshire Grocery Co.,*
    835 F.3d 1135 (5th Cir. 1988) ...............................................................................18

*Calhoun v. F. Hall Mowing Co.,*
    No. 02-09-00459-CV, 2011 WL 167231 (Tex.APP. – Ft. Worth, Jan. 13,
    2011, no pet.) .....................................................................................................10

*In re Cano Petrol., Inc.,*
    277 S.W.3d 470 (Tex.APP.—Amarillo 2009, orig. proceeding)............................14

*Dudik v. Mesquite Rodeo,*
    2004 WL 524947 (N.D.Tex. 2004)........................................................................12

*Kellerman v. Avaya, Inc.,*
    530 Fed.Appx. 384 (5th Cir. 2013)..................................................................15, 16

*Kruszynski v. SGS North America Inc.,*
    Civil Action No. H-16-1115, 2016 WL 7017428 (S.D. Tex. Nov. 30, 2016) .........10

*Lyon v. Allsup's Convenience Stores, Inc.,*
    997 S.W.2d 345 (Tex.APP. – Fort Worth 1999, no pet.)........................................13

*Meek v. Bishop Peterson & Sharp, P.C.,*
    919 S.W.2d 805 (Tex.APP.—Houston [14th Dist.] 1996, writ denied) .................14

*Paris v. Sanderson Farms, Inc.,*
    542 Fed.Appx. 370 (5th Cir. 2013)........................................................................15

*Reed Tool Co. v. Copelin,*
    610 S.W.2d 736 (Tex. 1980)..................................................................................10

*Samson v. Apollo Resources, Inc.,*
    242 F.3d 629 (5th Cir. 2001) ............................................................................17, 18

*In re Staley*,
   320 S.W.3d 490 (Tex.APP.—Dallas 2010, no pet.) ........................................................14, 16

*Stewart v. Lexicon Genetics, Inc.*,
   279 S.W.3d 364 (Tex. APP.—Beaumont 2009, pet. denied) ..................................................11

*Thawar v. 7-Eleven, Inc.*,
   165 F.Supp.3d 524 (N.D.Tex. February 29, 2016) .................................................................13

*Urdiales v. Concord Techs. Del., Inc.*,
   120 S.W.3d 400 (Tex. APP.—Houston [14th Dist.] 2003, pet. denied) ...........................11, 12

*Walls Reg. Hosp. v. Bomar*,
   9 S.W.3d 805 (Tex. 1999) .....................................................................................................10

*Wrenn v. G.A.T.X. Logistics, Inc*.,
   73 S.W.3d 489 (Tex.APP. – Fort Worth 2002, no pet.)..........................................................13

**Statutes**

29 U.S.C. § 207(a)(1)................................................................................................................17

Tex. Lab. Code § 408.001(a) ...................................................................................................10

Texas Workers' Compensation Act .......................................................................................2, 9

Texas Workers' Compensation Act . § 408.001 of the Texas Labor Code ..................................9

**BRIEF IN SUPPORT OF DEFENDANT'S PARTIAL
SUMMARY JUDGMENT MOTION**

Defendant Palo Alto Networks, Inc. ("PAN") files this Brief in Support of Defendant's Partial Summary Judgment Motion, asking the Court to dismiss Plaintiff's claims for negligence, negligent supervision, assault, and breach of contract.  PAN further moves the Court for a ruling that the Fluctuating Work Week method ("FWW" method) should apply to calculate any damages - *if he is even entitled to any damages at all* - with regard to Plaintiff's claim under the Fair Labor Standards Act ("FLSA").[1]  In support of its Partial Summary Judgment Motion, PAN states as follows:

# I.
# INTRODUCTION

Kevin Godert ("Plaintiff") is a former employee of PAN's facility in Plano, Texas. Plaintiff alleges that his former first-level manager, Kevin Hemphill ("Hemphill"), "assaulted" him by leaning over him and talking in his ear while he sat as his desk.  Following the alleged "assault," Plaintiff continued to work for PAN for ten months until he voluntarily resigned in February 2016 to accept employment with another company. In June 2016, Plaintiff initiated this litigation alleging multiple causes of action against PAN arising from the alleged assault by Hemphill – namely, negligence, negligent supervision, and assault.

Even assuming, for the purposes of this Motion, that events unfolded just as Plaintiff alleges, his claims related to the alleged assault have no legal merit and the Court should grant summary judgment to PAN on his claims for negligence, negligent supervision, and assault for the following reasons:

---

[1]     PAN does not challenge Plaintiff's FLSA misclassification claim *only* for purposes of summary judgment.  PAN intends to vigorously defend Plaintiff's FLSA misclassification claim at the trial in this matter.

- Plaintiff's claims for negligence and negligent supervision are barred, as a matter of law, by the exclusivity provision of the Texas Workers' Compensation Act ("Act").

- Plaintiff's claim for assault is barred by the exclusivity provision of the Act because Plaintiff simply has not and cannot attribute Hemphill's alleged assault to a vice-principal or alter-ego of PAN.  Alternatively, Plaintiff's claim for assault is barred because Hemphill's alleged actions were outside the course and scope of his employment.

Additionally, Plaintiff's breach of contract claims fail as a matter of law because no valid contracts existed and Plaintiff concedes that any of PAN's revisions to his compensation plans were merely an exercise of its express right to modify the terms of the plan at any time without cause and without notice.

Finally, with regard to Plaintiff's claim that he was improperly misclassified as exempt under the FLSA – the only claim for which PAN does not move for summary judgment – PAN seeks an order from the Court that the FWW method should apply to calculate any overtime damages - *if he is even entitled to any damages at all*.

## II.
## SUMMARY JUDGMENT EVIDENCE

In support of its Partial Motion for Summary Judgment, PAN relies on the following evidence contained in its Appendix of Exhibits to Defendant's Brief in Support of Its Partial Motion for Summary Judgment, filed contemporaneously with this Brief ("APP."):

Exhibit A:    Excerpts from Plaintiff's deposition taken on March 1, 2017, and exhibits thereto (Pl. Dep. and Dep. Ex.) [2]

Exhibit B:    Affidavit of Anjahli Mehta and exhibits thereto (Mehta Aff.)

---

[2]    Excerpts and exhibits from Plaintiff's depositions are attached as Exhibit "A".  References to this evidence are indicated by "Pl. Dep." or "Dep. Ex." followed by the page and line or deposition exhibit to which reference is made.  Unless otherwise noted, all emphasis is supplied by counsel.

### III.
### STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.   Plaintiff's Employment with PAN.**

1.      PAN is a network and enterprise security company headquartered in Santa Clara, California.   APP. 148-149 (Mehta Aff., ¶¶2-3). PAN develops and sells advanced firewalls designed to provide network security. APP. 149 (Mehta Aff. ¶3)  In October 2013, PAN hired Plaintiff to work as a Senior Business Development Representative ("SBDR") at PAN's Plano, Texas facility. APP. 6; APP. 52-54 (Pl. Dep. 58:7-59:6; Offer Letter, Dep. Ex. "2").   As an SBDR, Plaintiff worked in the inside sales department assisting outside field representatives in selling PAN's products and services.  APP. 9 (Pl. Dep. 74:3-77:4).

2.       Plaintiff worked on a team of approximately ten to fifteen SBDRs reporting to a first-level manager. APP. 8 (Pl. Dep. 69:4-10).  In February 2014, PAN hired Hemphill as a first-level manager.  Plaintiff reported to Hemphill from February 2014 until November 2015, when Plaintiff was reassigned to a different first-level manager due to a team restructure. APP. 7-8 (Pl. Dep. 64:20-66:10).  Plaintiff voluntarily resigned from PAN in February 2016 after he accepted employment with another company.   APP. 35-36; APP. 36-37; APP. 65 (Pl. Dep., 249:8-250:4; 252:12-254:2; Resignation Email, Dep. Exh. 10).

**B.   The Structure of the Plano Facility and Hemphill's Employment as a First-Level Manager.**

3.      During Plaintiff's employment, the inside sales operations at PAN's Plano facility were directed and controlled by Josh Hoffman ("Hoffman"), VP of WW Sales.  In August 2015, PAN hired Colleen Gobbi ("Gobbi") as the Director of Inside Sales to assist Hoffman in running PAN's inside sales operations at the Plano facility. APP. 149 (Mehta Aff., ¶ 6).  Anjali Mehta

("Mehta") acted as the Plano facility's Human Resources Business Partner.  APP. 148 (Mehta Aff., ¶ 2).

4.      Hemphill reported directly to Hoffman until PAN hired Gobbi, and Hemphill then reported directly to Gobbi.  APP. 149 (Mehta Aff., ¶ 6).

5.      Hemphill was not a corporate officer of PAN.   Further, Hemphill could not hire, discipline, or discharge employees alone.  Rather, Hoffman and Mehta made all final hiring, discipline, and discharge decisions regarding inside sales employees at the Plano facility until PAN hired Gobbi in August 2015.  Thereafter, Gobbi joined Hoffman and Mehta in making all final decisions regarding hiring, discipline, and discharge for inside sales employees at the Plano facility. APP. 149; APP. 18 (Mehta Aff., 7; Pl. Dep., 139:12-24).

6.      Hemphill was not the highest-level manager at the Plano facility, and he did not manage any PAN division or department.  While Hemphill was responsible for overseeing one group of SBDRs as a first-level manager, there were numerous other first-level managers at the Plano facility, many of whom had more seniority than Hemphill.  Additionally, the job duties were the same for all SBDRs and were not left to the discretion of Hemphill.  Further, Hemphill did not control the performance metrics driving compensation for employees. APP. 149; APP. 18 (Mehta Aff., ¶ 7; Pl. Dep., 138:10-139:11).

**C.      The April 1, 2015 Incident.**

7.      Plaintiff alleges that Hemphill "assaulted" him on April 1, 2015, while at work after the two had a tense exchange about Plaintiff's tardiness in providing Hemphill with information pertaining to Plaintiff's commissions.[3]   Plaintiff claims that after the exchange, Hemphill walked into his cubicle and, while standing behind Plaintiff at his chair, he "laid" into

---

[3]    PAN disputes Plaintiff's characterization of his interaction with Hemphill on April 1, 2015. However, solely for purposes of this Partial Motion for Summary Judgment, PAN accepts Plaintiff's allegations as true.

him which "pinned" Plaintiff to his desk.  Plaintiff alleges that Hemphill then leaned into his ear and said, "You get those fucking appointments switched."  Plaintiff responded, "Ok, I will get those changed," and Hemphill walked away after ten to fifteen seconds.  APP. 24-26; APP. 46 (Pl. Dep., 205:20-213:11; 324:3-5; Plf's Original Petition, ¶ 15, Dkt. No. 1-05 Exhibit C).

8.      Plaintiff admits that Hemphill did not leave any marks on him, and he did not hit him or shove him in any way.  APP. 26 (Pl. Dep., 212:18-21).  Plaintiff did not seek any medical attention until at least one month after the incident when he allegedly began experiencing pain in his neck and sought chiropractic treatment. APP. 26-29 (Pl. Dep., 213:12-225:8)  Plaintiff also claims his teeth were injured because he now grinds his teeth and that the incident had an overall negative impact on his physical and emotional health.  Further, Plaintiff asserts he has suffered emotional distress damages, which he values at $5 million. APP. 47 (Pl. Dep., 324:3-19; 326:13-17; Plf''s Original Petition, ¶ 15, Dkt. No. 1-05 Exhibit C).

9.      Plaintiff concedes he does not think anyone at PAN directed Hemphill to "assault" him.  Specifically, Plaintiff testified as follows:

Q: Do you have any evidence that anyone at the company directed Mr. Hemphill to do this, leaning over you and breathing in your ear?

A: No.

Q: And you're not alleging that anyone at the company directed Mr. Hemphill to do to this; is that right?

A: No.

Q: Yes, that's right?

A: Yes, that's right.

Q: And obviously, it wasn't part of Mr. Hemphill's job duties to pin you to your desk and breathe in your ear, correct?

A: No, it's not.

Q: So, yes, that's correct.

A: Yes, that's correct.

APP. 30 (Pl. Dep., 226:16-227:5).

10.     Plaintiff admits that Hemphill advocated to Hoffman for Plaintiff's promotion within the Company, and he appreciated Hemphill's efforts in doing so.  APP. 34 (Pl. Dep., 244:19-245:10).   Plaintiff also admits that Hemphill praised him in team and one-on-one meetings, told Plaintiff's co-workers that they could learn from Plaintiff because he was one of the best at his job, and gave Plaintiff outstanding performance ratings and positive comments on his reviews. APP. 45; APP. 18-20; APP. 55-64 (Pl. Dep., 312:3-313:15; 141:6-149:3; Performance Reviews, Dep. Exs. 3 and 4).

### D.     Plaintiff's Complaints About the April 1, 2015 Incident

11.     Plaintiff asserts he told the PAN receptionist about the April 1, 2015 incident, who then told a first-level manager, Alyssa Earnhart ("Earnhart").  Earnhart asked Plaintiff if he wanted her to tell Human Resources about the incident, and Plaintiff told her he was ambivalent. APP. 21; APP. 22(Pl. Dep., 191:15-193:23; 195:1-196:12).  Further, on April 17, 2015, Mehta informed Plaintiff that she was told he had concerns and asked Plaintiff to share them with her. Plaintiff declined, despite Mehta's assurances that she would keep his concerns as confidential as possible.  APP. 22-23(Pl. Dep., 196:13-200:19).

12.     Plaintiff admits he did not tell anyone in Human Resources about the incident until at least six months later in October 2015.  At that time, he told Mehta about the incident but said he did not want Hemphill to know he was making a complaint.  Mehta explained that it would be difficult to investigate the situation without Hemphill knowing because it was a one-on-one incident. APP. 23; APP. 32  (Pl. Dep., 200:20-201:2; 235:15-237:24).

13.     Plaintiff admits he did not refer to the April 1, 2015 incident as an "assault" when describing it to Mehta.  APP. 33; APP. 149 (Pl. Dep., 239:21-240:2; Mehta ¶ 9).

**E.     PAN's Workers' Compensation Coverage.**

14.     At the time of the alleged "assault," PAN subscribed to Texas workers' compensation insurance and offered compensation coverage to its employees, including Plaintiff. APP. 148; APP. 200-206 (Mehta Aff., ¶ 5 and Exhibit B-2 attached thereto). Plaintiff did not file a workers' compensation claim as a result of the April 1, 2015 incident with Hemphill. APP. 29 (Pl. Dep., 224:21-225:5).

**F.     Plaintiff's Breach of Contract Claim.**

**The 2015 Fiscal Year Compensation Plan**

15.     Plaintiff alleges that PAN breached the 2015 Fiscal Year Compensation Plan ("2015 FY Plan"). APP. 38-39; APP. 66-90 (Pl. Dep., 268:22-270:6; 2015 FY Plans, Dep. Exhs. 13, 14, and 15).  Specifically, Plaintiff alleges that PAN breached the 2015 FY Plan when Hoffman verbally changed the definition of "dark accounts" to exclude new U.S. customers that PAN already worked with outside of the U.S. APP. 39 (Pl. Dep., 270:17-273:20).

16.     Plaintiff admits the 2015 FY Plan expressly permitted PAN to modify or terminate the plan at any time with or without cause entirely at the discretion of PAN, and he accepted the terms of this 2015 FY Plan.  APP. 39; APP. 66-90 (Pl. Dep., 270:7-16; 2015 FY Plans; Dep. Exhs. 13, 14, and 15).

17.     Plaintiff concedes he does not know the amount of damages he allegedly incurred due to the definition change or even when the definition was changed.  In fact, Plaintiff admits he is just speculating that he was not appropriately compensated under the 2015 FY Plan. APP. 30-40 (Pl. Dep., 273:21-276:17).

**The 2016 Fiscal Year Compensation Plan**

18.     Plaintiff also alleges that PAN breached the 2016 Fiscal Year Compensation Plan ("2016 FY Plan"). APP. 41-42; APP. 82-99 (Pl. Dep., 284:16-289:1; 2016 FY Plans, Dep. Exhs. 16 and 17).  The 2016 FY Plan allowed SBDRs to earn up to 25% of their commission based on "pipelines," which were appointments that resulted in actual sales. APP. 42 (Pl. Dep., 286:6-287:3).  Plaintiff asserts that PAN breached the 2016 FY Plan because PAN did not allow SBDRs to receive credit for *multiple* sales resulting from one pipeline.  APP. 42-43 (Pl. Dep., 288:24-291:9).  Plaintiff alleges that Hoffman told employees they would get credit for multiple sales resulting from one pipeline at a meeting in August 2015.  However, Plaintiff concedes the written 2016 FY Plan was implemented *after* Hoffman's comment, and he is not aware of any document or plan stating that PAN would pay commission based on multiple sales resulting from one pipeline.  APP. 43 (Pl. Dep., 291:10-293:7).

19.     Like the 2015 FY Plan, the 2016 FY Plan expressly permitted PAN to modify or terminate the plan at any time with or without cause entirely at the discretion of PAN.  Plaintiff acknowledged and accepted the terms of the 2016 FY Plan.  APP. 43; APP. 82-99 (Pl. Dep., 293:8-17; 2016 FY Plan Dep. Exhs. 16 and 17).

20.     Plaintiff admits he earned more money under the new terms of the 2016 FY Plan than he earned under prior plans. APP. 42 (Pl. Dep. 288:19-23).

**G.     Plaintiff Was Advised His Salary Was Intended to Compensate For Any and All Hours Worked.**

21.     PAN classified Plaintiff as an exempt, salaried employee.  Upon hire, Plaintiff understood that PAN would pay him a base salary of $45,500 with the opportunity for commission, and during his employment, Plaintiff received his same weekly salary regardless of how many hours he worked each week.  APP. 6; APP. 3-4; APP. 5; APP. 52-54  (Pl. Dep. 59:18-

60:7; 46:10-53:22; 56:21-57:20; Offer Letter, Pl. Dep. 2).  Furthermore, at the time of his hire,

PAN provided Plaintiff with an employee handbook which contained the following policy:

**Deductions for Salaried Employees**

Employees paid on a salary basis regularly receive a predetermined amount of
compensation each pay period.  Subject to the exceptions listed below, a salaried
employee will receive his/her full salary for any workweek in which he/she
performs work, regardless of the number of days or hours worked…..

APP. 148; APP. 151-199 (Mehta Aff., ¶ 2 and Exhibit B-1 thereto)  Thereafter, in April 2014,

the Employee Handbook was revised and included the following policy:

**Salary Basis Policy**

Employees classified as exempt, salaried employees will receive a set salary
which is intended to compensate for any and all hours worked.  The salary will be
established at the time of hire or when you become classified as an exempt
employee.  The salary will be a predetermined amount that will not be subject to
deductions for the variations in the quantity or quality of the work you perform….

Plaintiff acknowledges he was provided with the handbook during his new hire process.  APP.

48-49; APP. 100-146 (Pl. Dep. 341:13-344:3; Employee Handbook, Dep. Exh. 28 (emphasis

added)).

**VI.**
**ARGUMENT AND AUTHORITIES**

A.   **Plaintiff's Negligence, Negligent Supervision, and Assault Claims Fail as a Matter of
Law.**

  **1.   Plaintiff's Claims for Negligence and Negligent Supervision are Barred
by Workers' Compensation Exclusivity.**

Plaintiff's claims premised on negligence are barred, as a matter of law, by the

exclusivity provision of the Texas Workers' Compensation Act ("Act").  Section 408.001 of the

Texas Labor Code specifically provides that recovery of workers' compensation benefits "is the

exclusive remedy of an employee covered by workers' compensation insurance

coverage…against the employer or an agent or employee of the employer for … a work-related injury sustained by the employee." Tex. Lab. Code § 408.001(a). Because the remedy provided by the Act is exclusive, an employee has no alternative right of action against his employer for alleged injuries sustained in the course and scope of employment. *See e.g. Calhoun v. F. Hall Mowing Co.*, No. 02-09-00459-CV, 2011 WL 167231, *4 (Tex.APP. – Ft. Worth, Jan. 13, 2011, no pet.). Thus, the exclusive remedy provision of the Act bars common law claims for negligence, including gross negligence. *See Kruszynski v. SGS North America Inc.*, Civil Action No. H-16-1115, 2016 WL 7017428 (S.D. Tex. Nov. 30, 2016) (finding claims for negligence and gross negligence arising from the plaintiff's work-related injury were barred by the exclusivity provision of the Act); *Reed Tool Co. v. Copelin,* 610 S.W.2d 736, 739 (Tex. 1980) (finding the Act was "intended to exempt employers from all common law liability based on gross negligence and negligence, except in death cases provided for in the Act.").

It is well settled that negligent supervision claims are among the type of claims barred by the exclusivity provision of the Act. *See Walls Reg. Hosp. v. Bomar*, 9 S.W.3d 805, 809 (Tex. 1999) (claim against employer for negligently hiring physician who assaulted plaintiff at work was barred by exclusivity provision); *Arredondo v. Estrada*, 120 F.Supp.3d 637 (S.D. Tex. 2015) (holding exclusivity provision of the Act barred the plaintiff's claims for negligent hiring and retention of alleged harasser where the employer was a workers' compensation subscriber).

In the instant case, PAN employed Plaintiff at the time he claims the alleged "assault" occurred and he suffered injuries. At all relevant times, PAN carried an insurance policy that provided workers' compensation coverage to its employees. APP. 148; APP. 200-206 (Mehta Aff., ¶ 5 and Exhibit B-2 attached thereto); *see* PAN's Original Answer, Affirmative Defense No. 23, Dkt. No.1-9. Therefore, the exclusivity provision of the Act precludes Plaintiff's

negligence and negligent supervision claims, and PAN is entitled to summary judgment on those claims as a matter of law.

## 2. Plaintiff's Claim for Assault is also Barred by Workers' Compensation Exclusivity.

Plaintiff's assault claim against PAN is also barred as a matter of law based on the exclusivity provision of the Act.  The court in *Stewart v. Lexicon Genetics, Inc.,* 279 S.W.3d 364 (Tex. APP.—Beaumont 2009, pet. denied) addressed the intersection of the exclusivity provision and intentional tort claims.  In *Stewart*, the plaintiffs sued their former employer alleging "false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence" in connection with the managerial investigation that led to their termination.  The defendant argued that the Act's exclusivity provision barred these vicarious liability intentional tort claims, and that only individual-employer or employer-directed assaults could be the basis of common-law claims. In analyzing the defense, the *Stewart* court "construe[d] the exclusive-remedy provision of the [Act] to require an act of a vice-principal for the intentional tort exception to apply." *Id*. at 370.  In other words, unless the bad actor is a vice-principal or above, the Act is the exclusive remedy – even for intentional torts.  In reaching this decision, the court relied on *Urdiales v. Concord Techs. Del., Inc.,* 120 S.W.3d 400 (Tex. APP.—Houston [14th Dist.] 2003, pet. denied).  In *Urdiales*, the court decided that only in the rarest of cases did an employee have an electable common law remedy for an intentional tort, because "it would disturb the balance [the Act] achieved if we allowed an employee, injured by the intentional tort of a co-employee, to sue and recover from their employer simply because the tort was committed (1) at work (2) by an employee of the company." *Id*. at 407.

Plaintiff alleges that PAN is liable for the intentional tort (the alleged assault) of Hemphill.  *See* Pl.'s Original Petition, ¶¶ 24-27, Dkt. No. 1-05 Exhibit C.  However, the

undisputed evidence establishes that even if Hemphill engaged in the assault alleged by Plaintiff, Hemphill was *not* a vice-principal or alter-ego of PAN.

A corporation's vice-principals include: (1) corporate officers; (2) those who have authority to employ, direct, and discharge other employees; (3) those engaged in performing the corporation's nondelegable or absolute duties; and (4) those responsible for the management of the whole or a department or a division of the business employees. *Stewart,* 279 S.W.3d at 370. Here, Hemphill was not a corporate officer of PAN, he could not hire, discipline, or discharge employees, he was not the highest level manager at the Plano facility, and he did not manage any PAN division or department.  Furthermore, while Hemphill was responsible for overseeing one group of SBDRs as a first-level manager, there were *numerous* other first-level managers at the Plano facility, many of whom had more seniority than Hemphill. APP. 149; APP. 18 (Mehta Aff. ¶¶ 6-7; Pl. Dep. 138:10-139-24).  Under similar facts, courts have held that low-level managers such as Hemphill are not the vice-principals or alter-egos of the employer.  *See Dudik v. Mesquite Rodeo*, 2004 WL 524947 (N.D.Tex. 2004) (holding that the plaintiff's claim against her employer for the alleged assault of her supervisor was barred by the Act's exclusivity provision because there was no evidence that the supervisor possessed ownership or control over the employer); *Urdiales,* 120 S.W.3d 400 (Tex. APP.—Houston [14th Dist.] 2003, pet. denied) (holding that plaintiff's assault claim against employer based on actions of his supervisor was barred by the Act's exclusivity provision).

Plaintiff simply has not and cannot attribute Hemphill's alleged assault to a vice-principal or alter-ego of PAN.  As such, the exclusivity provision also bars Plaintiff's assault claim, and PAN is entitled to summary judgment on this claim as a matter of law.

> **3.   Alternatively, Plaintiff's Intentional Tort Claim Against PAN Fails as a Matter of Law Because Hemphill's Actions Were Not In the Course and Scope of His Duties.**

Additionally and independent of the foregoing, Plaintiff's claims for assault against PAN fail as a matter of law because PAN cannot be vicariously liable for the intentional torts of its employees committed outside the course and scope of employment.  "As a general rule in Texas, an employer cannot be vicariously liable for the intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 494 (Tex.APP. – Fort Worth 2002, no pet.); *Thawar v. 7-Eleven, Inc.,* 165 F.Supp.3d 524 (N.D.Tex. February 29, 2016) (supervisor's alleged assault and battery was not within his scope and course of employment, nor was supervisor a vice-principal); *Lyon v. Allsup's Convenience Stores, Inc.,* 997 S.W.2d 345 (Tex.APP. – Fort Worth 1999, no pet.) (affirming summary judgment to defendant upon finding employer could not be held vicariously liable for intentional infliction of emotional distress based on actions by the plaintiff's supervisor that were outside the scope of the supervisor's employment).

Here, Plaintiff's assault claim fails because the undisputed evidence establishes that the alleged assault by Hemphill was not within the scope of Hemphill's employment with PAN.  In his deposition, Plaintiff admits PAN did not direct Hemphill to assault him and that it was not Hemphill's job to lean over Plaintiff and pin him to his desk.  APP. 30; APP. 149 (Pl. Dep., 226:16-227:5; Mehta ¶ 9).  In other words, Plaintiff concedes that Hemphill's actions on April 1, 2015 were *not* within the scope of his employment.  Furthermore, PAN's Employee Handbook has a clear policy against workplace violence, in which PAN makes clear that it "does not tolerate any type of workplace violence committed by or against employees" and such acts "will

be subject to disciplinary action, up to and including termination."   APP. APP. 100-146
(Employee Handbook, Dep. Exh. 28).   Accordingly, the alleged assault by Hemphill was clearly
not within his scope of employment, and therefore, PAN cannot be held vicariously liable for
assault.  PAN is entitled to summary judgment on the assault claim for this further reason.

**B.**     **Plaintiff's Breach of Contract Claims Fail as a Matter of Law.**

Plaintiff's breach of contract claims based on the 2015 and 2016 FY Plans fail as a matter
of law.  Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a
valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of
performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result
of the breach." *In re Staley,* 320 S.W.3d 490, 499 (Tex.APP.—Dallas 2010, no pet.). "Whether a
party has breached a contract is a question of law for the court, not a question of fact for the
jury." *Meek v. Bishop Peterson & Sharp, P.C.,* 919 S.W.2d 805, 808 (Tex.APP.—Houston [14th
Dist.] 1996, writ denied). "The court determines what conduct is required by the parties, and,
insofar as a dispute exists concerning the failure of a party to perform the contract, the court
submits the disputed fact questions to the jury." *Id.* In other words, "[w]hile the factual
determination of what actions were taken is for the fact finder, whether those actions constitute a
breach of contract is a question of law for the court." *In re Cano Petrol., Inc.,* 277 S.W.3d 470,
473 (Tex.APP.—Amarillo 2009, orig. proceeding).

As an initial matter, Plaintiff's breach of contract claims fail because neither the 2015 nor
the 2016 FY Plans were valid contracts as a matter of law.  Both plans contain provisions
applying California law to the plans.  However, whether the Court applies California law or
Texas law the result is the same because the plans expressly permitted PAN to modify or
terminate the plan at any time with or without cause entirely at the discretion of PAN. APP. 39;

APP. 66-81 (Pl. Dep., 270:7-16; 2015 FY Plan, Dep. Exhs. 13-15); APP. 43; APP. 82-99 (Pl. Dep., 293:8-17; 2016 FY Plans, Dep. Exhs. 16-17).   Specifically, both California and Texas courts have held that where the employer retained the right to modify or cancel the commission plan, no contract was formed.  *See Schwarzkopf v. International Business Machines, Inc*., 2010 WL 1929625 *7-8 (N.D.Cal. May 12, 2010) (holding under California law the compensation plan did not create a contract because it contained a reservation of rights to modify or cancel the plan at any time); *Stinger v. Stewart & Stevenson Services, Inc.,* 830 S.W.2d 715, 719-720 (Tex.APP. 1992) (holding that the commission arrangement was not contractually binding due to employer's reservation of discretion).

Even if the Court were to find that the plans constitute valid contracts – which they do not – Plaintiff's breach of contract claims fail because PAN did not breach the plans.  Plaintiff alleges that PAN breached the 2015 FY Plan when Hoffman verbally changed the definition of "dark accounts." APP. 39 (Pl. Dep., 270:17-273:20).   However, Plaintiff admits the 2015 FY Plan expressly permitted PAN to modify or terminate the plan at any time with or without cause entirely at the discretion of PAN, and he accepted the terms of this 2015 FY Plan.  APP. 39; APP. 66-81 (Pl. Dep., 270:7-16; 2015 FY Plan, Dep. Exhs. 13-15).  Thus, even if Plaintiff's allegation is correct, PAN was merely exercising its right to modify the terms of the plan, and therefore, Plaintiff's breach of contract claims fails as a matter of law.  *See Kellerman v. Avaya, Inc.,* 530 Fed.Appx. 384 (5th Cir. 2013) (holding that where an employer exercises rights reserved in the contract, there can be no breach of contract).  Furthermore, Plaintiff's admission that he is merely speculating he was not appropriately compensated under the 2015 FY Plan is also fatal to his claim.  APP. 39-40 (Pl. Dep., 273:21-276:17).  *See Paris v. Sanderson Farms,*

*Inc.,* 542 Fed.Appx. 370 (5th Cir. 2013) (holding that the plaintiff's speculation and unsubstantiated assertions could not defeat summary judgment).

Plaintiff's breach of contract claim based on the 2016 FY Plan likewise fails as a matter of law. Plaintiff alleges that PAN breached the 2016 FY Plan because PAN did not allow SBDRs to receive credit for *multiple* sales resulting from one pipeline. APP. 42-43 (Pl. Dep., 288:24-291:9). Plaintiff's assertion is based on an alleged comment by Hoffman that he told employees they would get credit for multiple sales resulting from one pipeline at a meeting in August 2015. However, Plaintiff concedes the written 2016 FY Plan was implemented *after* Hoffman's comment, and he is not aware of any document or plan stating that PAN would pay commission based on multiple sales resulting from one pipeline. APP. 43 (Pl. Dep., 291:10-293:7).

Furthermore, like the 2015 FY Plan, the 2016 FY Plan expressly permitted PAN to modify or terminate the plan at any time with or without cause entirely at the discretion of PAN, and Plaintiff acknowledged and accepted the terms of the 2016 FY Plan. APP. 43; APP. APP. 82-99 (Pl. Dep., 293:8-17; 2016 FY Plans, Dep. Exhs. 16-17). Thus, as stated above, even if Plaintiff's allegation is correct, PAN was merely exercising its right to modify the terms of the plan, and therefore, Plaintiff's breach of contract claim fails as a matter of law. *See Kellerman,* 530 Fed.Appx. 384 (5th Cir. 2013).

Plaintiff's breach of contract claims also fail because there is no evidence of damages. *In re Staley,* 320 S.W.3d 490, 499 (Tex.APP.—Dallas 2010, no pet.) (the elements for a breach of contract claim include a showing that plaintiff incurred damages). With regard to the 2015 FY Plan, Plaintiff admits he does not know the amount of damages he allegedly incurred as a result of the alleged breach due to the definition change or even when the definition was changed. In

fact, Plaintiff admits he is just speculating that he was not appropriately compensated under the 2015 FY Plan.  APP. 39-40 (Pl. Dep., 273:21-276:17).  Similarly, Plaintiff no has no evidence of damages with regard to the 2016 FY Plan, and Plaintiff admits he earned more money under the new terms of the 2016 FY Plan than he earned under prior plans. APP. 42 (Pl. Dep. 288:19-23).  Thus, Plaintiff cannot establish he suffered any damages as a result of the breach, and PAN is entitled to summary judgment on his breach of contract claims for this additional reason.

**C.      The Court Should Apply the Fluctuating Workweek Method to Calculate Any Damages with Regard to Plaintiff's FLSA Claim.**

While PAN does not move for summary judgment with regard to Plaintiff's FLSA misclassification claim, PAN does move the Court for a summary judgment ruling with regard to how the Court must calculate Plaintiff's damages, if any, under the FLSA. Specifically, PAN moves the Court for a ruling that the FWW method should apply.

The FLSA sets the standard workweek at forty hours and requires employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for any hours worked in excess of forty. 29 U.S.C. § 207(a)(1). The FWW method is one method of satisfying the FLSA's overtime pay requirement. *Samson v. Apollo Resources, Inc.,* 242 F.3d 629, 636 (5th Cir. 2001) ("[T]he FWW method is one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1)."). The FWW is an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week. *Black v. SettlePou, P.C.,* 732 F.3d 492, 496-497 (5th Cir. 2013).  If a jury finds that an employer misclassified an employee and the employee is due overtime pay, the court must determine as a matter of law whether to apply the standard method of calculating the amount of overtime pay using the one and one-half times the regular rate of pay multiplier found in the FLSA, or to apply the FWW multiplier of only one-half of the regular rate of pay.  *Id.*

Importantly, the plaintiff has the burden to prove that a nonfluctuating-workweek method should be applied. *Samson v. Apollo Res., Inc.,* 242 F.3d 629, 636 (5th Cir. 2001).

The Fifth Circuit has held that the FWW method of calculating overtime premiums in a misclassification case is appropriate when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours. *See Black,* 732 F.3d at 496-497 citing *Blackmon v. Brookshire Grocery Co.,* 835 F.3d 1135, 1138-39 (5th Cir. 1988) (holding that the FWW method of overtime calculation is appropriate "when the employer and the employee have agreed on a fixed salary for varying hours").  In reaching this determination, the court looks to the parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment to determine whether the parties agreed that the employee would receive a fixed salary as compensation for all hours worked in a week, even though the number of hours may vary each week. *Ransom,* 734 F.3d at 386, 2013 WL 4402983, at *7 (concluding that the parties' "course of conduct, along with the parties' initial understanding of the employment arrangement, establishes that the [employees] were to be paid a fixed salary for the total number of hours they worked in a week").

Here, it is undisputed that PAN classified Plaintiff as an exempt, salaried employee, and Plaintiff understood that PAN would pay him a base salary of $45,500 with the opportunity for commission. APP. 6; APP. 3-4; APP. 5; APP. 52-54 (Pl. Dep. 59:18-60:7; 46:10-53:22; 56:21-57:20; Offer Letter, Dep. Ex. 2).  Furthermore, at the time of his hire, PAN provided Plaintiff with an employee handbook which contained the following policy:

**Deductions for Salaried Employees**

Employees paid on a salary basis regularly receive a predetermined amount of compensation each pay period.  Subject to the exceptions listed below, a salaried employee will receive his/her full salary for any workweek in which he/she performs work, regardless of the number of days or hours worked…..

APP. 148; APP. 151-199 (Mehta Aff., ¶ 2 and Exh. B-1 thereto)  In April 2014, PAN revised its employee handbook to include the following similar policy:

**Salary Basis Policy**

Employees classified as exempt, salaried employees will receive a set salary which is intended to compensate for any and all hours worked.  The salary will be established at the time of hire or when you become classified as an exempt employee.  The salary will be a predetermined amount that will not be subject to deductions for the variations in the quantity or quality of the work you perform....

APP. 48-49; APP. 100-146 (Pl. Dep. 341:13-344:3; Employee Handbook, Dep. 28 (emphasis added)).

Additionally, during his employment, Plaintiff admits he received his same weekly salary regardless of how many hours he worked each week.  APP. 6; APP. 3-4; APP. 5 (Pl. Dep. 59:18-60:7; 46:10-53:22; 56:21-57:20).  Accordingly, the undisputed facts demonstrate that the parties' agreed PAN would pay Plaintiff a fixed weekly wage to work fluctuating hours, and PAN is entitled to a ruling as a matter of law that the FWW method applies to this case.

## VII.
## CONCLUSION

As set forth herein, Plaintiff's negligence, negligent supervision, and assault claims are barred by the exclusivity provision of the Act.  Additionally, and alternatively, Plaintiff's assault claim against PAN fails because PAN cannot be held vicariously liable for Hemphill's actions taken outside the scope of his employment. Further, Plaintiff's breach of contract claims fail because any modifications to the 2015 and 2016 FY Plans were within the express terms of the contract terms.

PAN, therefore, requests that the Court grant this Partial Motion for Summary Judgment dismissing Plaintiff's negligence, negligent supervision, assault, and breach of contract claims,

leaving only Plaintiff's FLSA misclassification claim for issue at trial.  PAN further requests a

summary judgment ruling that should Plaintiff be entitled to any damages pursuant to his FLSA

claim, such damages must be calculated pursuant to the FWW method.

Respectfully submitted,

*/s/ Robyn M. Funk*
John B. Brown
Texas Bar No. 00793412
john.brown@ogletreedeakins.com
Robyn M. Funk
Texas Bar No. 24104415
robyn.funk@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
Preston Commons, Suite 500
8117 Preston Road
Dallas, Texas  75225
Telephone:  214-987-3800
Facsimile:  214-987-3926

**ATTORNEYS FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 30th day of June, 2017, I electronically transmitted the
foregoing document to the Clerk of Court using the ECF system of filing, which will transmit a
Notice of Electronic Filing to all counsel of record.

/s/ Robyn M. Funk
ROBYN M. FUNK

30320232.4